*W. G. Denman,* City Solicitor, and *Charles K. Friedman,* Assistant City Solicitor, for defendants.

---

## INSURANCE OF RAILROAD FREIGHT BRAKEMAN.

[Circuit Court of Lorain County.]

BELL H. SNOW v. MODERN WOODMEN OF AMERICA.

Decided, October 12, 1902.

*Insurance—Occupation of "Railroad Freight Brakeman" Excluded—Holder of Policy Killed While Employed as a District Yard Brakeman—Meaning of the Excluded Occupation Determined from the Hazard—Motion by Both Parties to Direct Verdict—Gives the Case to the Court for Determination.*

1. Where it is provided in a policy of life insurance that the policy shall be void should the insured be killed while employed as a "railroad freight brakeman," this provision is not rendered inoperative by reason of the fact that his employment was what was known as a "district yard brakeman," if it appears that the hazard connected with the employment remains substantially the same.

2. Error does not lie to the determination of a case by the court, where at the conclusion of the evidence each party moved that the jury be instructed to return a verdict in his favor.

CALDWELL, J. (orally); HALE, J., and MARVIN, J., concur.

The son of Bell H. Archer Snow, on October 16, 1899, was engaged upon the electric railway, and he then made application

for membership in the Modern Woodmen of America, which is a mutual benefit society.

He entered service upon a steam railroad and lost his life. Bell Snow brings this action to recover on the policy in which she was the beneficiary. The action was tried below and a judgment rendered for the defendant, and a petition in error is prosecuted in this court to reverse that judgment.

The question in this case is wholly one of fact. When the action was commenced and the answer first filed and also an amended answer, it was claimed on behalf of the plaintiff below, Bell Snow, that the deceased was engaged in the work on the railroad as a railroad freight brakeman; but after the amended answer was filed and a reply filed to the amended answer, it was then claimed that he was what is known as a district yard brakeman, and that he was not a railroad freight brakeman. And the contention in the case in the evidence is, whether there is such a thing as a district yard brakeman, and whether there is such a thing as a railroad switchman; whether he acted in the capacity of a district yard brakeman or a railroad freight brakeman and whether he was acting as a switchman also. And the way that contention arose was this: There was a provision in the application or policy, that if he was killed while acting in the capacity of a railroad freight brakeman or railroad switchman his policy should become void, and if he was acting in that capacity then this policy is void; if he was not, but acted in some other capacity, then if he is killed the insurance would be good, even if he did act in that capacity, and the plaintiff ought to recover.

It is not necessary to discuss this evidence, but there is considerable evidence to show that among the men there is what is known as a district yard brakeman, and that his duties or the place in which he works at least is different from that of a railroad freight brakeman, but we think the evidence shows that his duties are largely the same; notwithstanding he is called by the witnesses a district yard brakeman, yet he is really a railroad freight brakeman; he was a brakeman on freight cars exclusively, except as they might in the yards want to switch out passenger cars. He traveled from one point to another, but

did not run over the whole line as a rule, and yet I notice these witnesses are wonderfully puzzled when the question was asked them, "Suppose he should go to Massillon or at times to Uhrichsville? The district in which he was working and in which he generally worked was that of Elyria and Grafton.

"Now what if he went to Massillon, what would he be?" I notice the witnesses were puzzled and confused to know whether he was then a railroad freight brakeman or still a district yard brakeman. Now under this evidence, it is necessary to see what the parties were trying to get at when this contract was made. The parties had in their minds no such fine distinction as is drawn by some of these witnesses. The company was saying, we will not insure you if you are engaged in a certain line of work, because of its danger, it makes the hazard too great, we will not undertake it, and hence they said to the party, if you are engaged as a railroad freight brakeman or railroad switchman we will not insure you, and after you are insured if you become engaged in those avocations, then your policy shall be void. Now he assented to that. What did they understand, what were they trying to get at? They were trying to get at this, a man who brakes on a freight train and is engaged in constantly coupling and in handling these freight cars, is in a business that is exceedingly hazardous; he is on the ground, jumping on to engines, running from one car to another; he is stopping cars when they are kicked and when they are switched and under all circumstances. They say this is such a hazardous thing we will not take the risk on your life, or if you are a switchman in the same way you are jumping on to locomotives, you are jumping off, riding on the cow-catchers, you are riding everywhere, and that is so hazardous we will not accept you as a risk; if you become such we will not take you.

That is what the parties were getting at, and the only way to avoid this testimony and the intent of the parties is by reason of applying to him a technical name, that of district yard brakeman. Yet he is still performing the same things, doing the same things, in substance, the same hazardous work that he would if he was a freight brakeman. That is what the parties had under consideration when they made this contract, and we think

this evidence shows that this work was quite hazardous, that he was a railroad freight brakeman, and he was not doing anything else but acting as a freight brakeman, althought he had a limited territory, that is the only difference. I mean by that, it is the only difference that ought to bear on this contract. Of course there is a difference in pay, and other little differences that do not bear upon the intention of the parties in making the contract at all.

The case was decided in favor of the insurance company, and we think justly so under this testimony.

Now it is contended there was error in the introduction of testimony. This question was asked:

"What is meant by a railway freight brakeman?" Answer. "A man who runs on a through train, a way train; a man who may brake on a through train or way train."

That was objected to and an exception saved to the ruling of the court in overruling the objection. Then the testimony goes right on to ascertain from the witness the duties of a railway freight brakeman, instead of stating what the difference is, or what constitutes one or what constitutes another, he now goes on to tell the duties of each, which is the better way, so that the whole testimony which was sought in that case was determined, and that was not error.

This question was asked:

"And is there any difference in the pay that they receive?"

And that was objected to and sustained. It clearly appears from the testimony, and is not disputed on the other side, that there is a difference in the pay, so it could not possibly have been prejudicial, because we do not see it determined any question under this contract that is material to it. It was not to be void if he received less pay than somebody else, some other class of men; but it was to be void if he did a certain kind of work, if he was engaged in a certain kind of work, and hence, the pay hasn't anything scarcely to do with it.

Then there was a conversation between him and another party, and that party was called, after this insurance was perfected; there was a conversation as to what he said about the validity

of his policy by the fact he was engaged upon the railroad, and doing the kind of work he was.

The court, after that testimony was partly introduced, made a ruling that it was not competent at all to defeat the plaintiff's right under that contract, she being the one to whom the money was to be paid; that he could not make any admission nor by any conduct of his, anything he might say, defeat her right to a recovery, and that seems to be the holding of the court, so the court ruled that testimony was not admissible for any such purpose as that, but only as showing what he was engaged in doing at that time, and that testimony was all received under that ruling, although different questions were asked thereafter and exceptions taken, yet that ruling of the court was made, and we do not see why it may not be used to show what work he was engaged in at the time of this conversation.

It was not necessary to show the kind of work he was then doing, and the purpose of the party might have been for something else; but the court was ruling it might be admitted for one purpose, it was proper only for that purpose, although perhaps the purpose of the party introducing it was to get before the jury the fact he thought his policy was not good for anything if he was killed in the service, by reason of the occupation he was following. But that the parties could have easily taken care of by having the court charge the jury specially they should not consider the evidence for such purpose.

Then this objection is made, when the evidence was all in, the plaintiff asked the court to direct the jury to bring in a verdict in her favor. Immediately the defendant, with apparent pleasure so far as we can see, asked the court to direct a verdict in favor of the company, and the court thereupon took the case and disposed of it. The case, *First National Bank* v. *Hayes,* 64 Ohio St., 100, we think, is decisive of this question, that such was the duty of the court, and it was not error in the court to do it, where both parties request the court to charge the jury to bring in a verdict in favor of himself. So we find no error in this record, and we affirm the judgment.

*Metcalf & Cinniger,* for plaintiff in error.

*E. G. Johnson,* for defendant in error.